The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,

Plaintiff,

v.

BINH "ERIC" MAI, et al.,

Defendants.

No. C09-0474RAJ

ORDER

This matter comes before the court on Plaintiff's motion for a preliminary injunction (Dkt. # 2). The court has considered the parties' briefing and supporting evidence, and has heard from the parties at oral argument. For the reasons explained below, the court GRANTS Plaintiff's motion (Dkt. # 2).

## I. FINDINGS OF FACT[1]

1. Plaintiff Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business in Redmond, Washington.

2. Microsoft is in the business of, among other things, producing and distributing software and other computer solutions to customers. Microsoft permits qualified educational users — students, faculty and staff members — to obtain special

---

[1] The only factual evidence submitted in this case has been submitted by Plaintiff; the Defendants have not offered any evidence to contest Plaintiff's evidence. Thus, the findings of fact contained in this order are based on Plaintiff's uncontested evidence.

ORDER - 1

discounts on boxed, retail versions of Microsoft software. *See* Givarz Decl. (Dkt. # 2-2) ¶ 3. These qualified educational users may obtain, at substantial discount, Academic Edition full packaged product ("FPP"). *Id.* The Academic Edition FPP is the same software as the regular retail version. *Id.* The only differences are the Academic Edition label and the discount price. *Id.*

3. Academic Edition FPP is distributed only through channels authorized by Microsoft. *See* Givarz Decl. ¶ 4. One primary means of distribution is through software retailers who are qualified as a Microsoft Authorized Education Reseller ("AER"). *Id.* Microsoft AERs are specially trained and authorized to sell Academic Edition software to qualified educational users. *Id.* AERs obtain Academic Edition FPP at substantial discounts, and are required to distribute Academic Edition FPP only to qualified educational users. *Id.*

4. Enrollment in the Microsoft Authorized Education Reseller program requires certain express representations and acceptance of the Microsoft Authorized Education Reseller Agreement (the "AER Agreement"), as well as the provision of certain identification and qualification data. *See* Givarz Decl. ¶ 5.

5. The AER Agreement requires that Academic Edition FPP be sold only to qualified educational users for personal use, and limits the frequency of sales to any one educational user. *See* Givarz Decl. ¶ 6.

6. The AER Agreement requires that AERs are responsible for validating and recording proof that a purchaser is a qualified educational user. *See* Givarz Decl. ¶ 7.

7. The AER Agreement also establishes limitations on an AER's marketing of Academic Edition software, and prohibits the marketing of Academic Edition software to the general public. *See* Givarz Decl. ¶ 7.

ORDER - 2

8. Under the AER Agreement, Microsoft is entitled to undertake periodic inspections of an AER's books and records to audit an AER's compliance with program requirements. *See* Givarz Decl. ¶ 8.

9. In the event an AER distributes product to anyone other than qualified education users or otherwise breaches the AER Agreement, the AER is required to "reimburse Microsoft for the difference between the estimated retail prices for all AE Products so distributed and the estimated retail price for non-AE Product versions of the same product or license titles, without prejudice to any of Microsoft's other legal or equitable rights or remedies." Givarz Decl., Ex. 1 ¶ 8.

10. Defendant ATCCOMPUTERS.COM, LLC ("ATC Computers") is a California limited liability company, which does business as "ATC Computers.com."

11. ATC Computers first applied for the AER program and executed the AER Agreement on or about February 28, 2005. ATC Computers executed the AER Agreement in succeeding years, most recently on November 11, 2008. *See* Givarz Decl. ¶ 10.

12. After enrolling in the AER program, ATC Computers placed orders and obtained thousands of copies of Academic Edition FPP software at discounted prices. *See* Givarz Decl. ¶ 11. Among other various software titles, ATC Computers ordered over 14,000 copies of Academic Office Pro. *Id.* The discount provided to ATC Computers for this academic software was approximately $360 per copy, which equates to a total discount of over $5 million for that one title alone. *Id.*

13. ATC Computers marketed this academic software to the general public and other unqualified purchasers in violation of the AER Agreement. *See* Lang Decl. (Dkt. # 2-3) ¶¶ 3-11. Microsoft did two "test purchases" from ATC Computers, and determined that ATC Computers sold the software to unqualified purchasers, failed to

validate and record proof that purchasers were qualified educational users, and took other actions in violation of the AER Agreement. *Id.*

14. The test purchaser ordered software from ATC Computers on both eBay and on defendants' website, and received from defendants the academic edition of that software. *Id.* ATC Computers did not inquire about her qualifications as a student or educator, and did not ask for or record any proof that the purchaser was a qualified educational user. *Id.*

15. ATC Computers' widespread and unauthorized sale of Academic Edition FPP software harms not only Microsoft, but it harms legitimate distributors of Microsoft's product and impairs the goal of supporting students and educators. *See* Givarz Decl. ¶ 13. By obtaining Academic Edition FPP at significant discounts, ATC Computers obtains an enormous competitive edge against legitimate retail sellers, and can undercut any legitimate pricing. *Id.* Likewise, ATC Computers are able to enrich themselves by capitalizing on the millions of dollars in discounts, while depriving qualified educational users of this vast quantity of software. *Id.*

16. ATC Computers has refused to permit Microsoft access to its books and records, and have refused to allow Microsoft to audit its compliance with the AER requirements. *See* Wilcox Decl. (Dkt. # 2-4) ¶¶ 3-10. Despite their purported agreement to permit Microsoft to conduct an audit on March 24, 2009, ATC Computers abandoned its physical location, absconded with all remaining software products, and failed to provide Microsoft with contractually required access to its records. *Id.*

### III. CONCLUSIONS OF LAW

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Microsoft has made a showing of a reasonable probability of personal jurisdiction over ATC Computers, which engaged in business activities in and directed to Washington, allegedly committed a tortious act within the state, and purposefully availed itself of the opportunity to conduct commercial activities in this forum.

3. Microsoft has made a showing of a reasonable probability that venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), based on its evidence that a substantial part of the events or omissions giving rise to the claims pled herein occurred in the Western District of Washington.

4. To obtain preliminary injunctive relief, a plaintiff must satisfy either the "traditional" or "alternative" test. Under the traditional test, the court must find that: (1) the moving party will suffer irreparable injury if the relief is denied, (2) the moving party will probably prevail on the merits, (3) the balance of potential harm favors the moving party, and (4) the public interest favors granting relief. *Cassim v. Bowen,* 824 F.2d 791, 795 (9th Cir. 1987).

5. The alternative test requires the court to find: (1) a combination of probable success and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Id.* Under this last part of the alternative test, "even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *Johnson v. Cal. St. Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir. 1995). The two prongs of the alternative test are not separate inquiries, but rather "extremes of a single continuum." *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir. 2003). "[T]he less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter Registration Educ. Project v. Shelley,* 344 F.3d 914, 918 (9th Cir. 2003).

6. In this case, Microsoft has satisfied both the "traditional" and "alternative" tests.

7. Microsoft's complaint alleges claims for breach of contract, fraud, rescission, and other tort claims, and seeks return of the software, disgorgement of proceeds from defendants' sales, damages and attorneys' fees, in addition to injunctive relief.

8. Microsoft will likely succeed on the merits of its claims.

9. Microsoft's evidence of ATC Computers' material breach of the AER Agreement is alone sufficient to support a preliminary injunction. The "test purchases" conclusively demonstrate that defendants violated the AER Agreement's provisions that restrict sale of Academic Edition FPP product to only qualified educational users, that require validating and recording proof that a purchaser is a qualified educational user, and that prohibit marketing of Academic Edition software to the general public.

10. ATC Computers's refusal to permit Microsoft's auditors to access books and records is another independent breach of the AER Agreement.

11. ATC Computers's breach of contract entitles Microsoft to contractually specified damages measured by the discount from retail price provided to ATC Computers – a sum of more than $5 million. In this instance, however, ATC Computers's flight raises serious uncertainty about their financial wherewithal and Microsoft's corresponding ability to enforce such a judgment. In addition, Microsoft seeks and is likelty to prevail upon its claims for non-monetary relief, including return of the academic software, cessation of ATC Computers's sales, and an accounting of its sales and profits.

12. Microsoft will suffer irreparable harm absent entry of a preliminary injunction. To adequately protect the rights of Microsoft and the consuming public,

ATC Computers must be immediately prevented from continuing to improperly and misleadingly distribute academic software. Similarly, restraint of further distribution is appropriate to preserve the AER software, to permit its distribution to its intended educational users, and to allow Microsoft meaningful restitution.

13. Microsoft will also suffer irreparable harm unless ATC Computers promptly delivers upon its unfulfilled contractual obligation to provide Microsoft with access to its books and records. This information, if it still exists, is easily hidden, altered or destroyed, as is evidenced by ATC Computers's flight. The balance of the equities and public interest weigh heavily in favor of granting an injunction.

14. The public interest will be benefited by prompt injunctive relief. ATC Computers's ability to inappropriately obtain deep discounts allows it to improperly compete with, and undercut, legitimate distributors of Microsoft's retail products. Legitimate, independent retailers who sell Microsoft's software have much higher costs of acquisition, and cannot compete with ATC Computers.

15. Likewise, the consuming public will be benefited by preventing ATC Computers from continuing to misrepresent the true nature of the software that it distributes. By issuing an injunction, the Court can insure that future online purchasers will not mistakenly receive academic software when attempting to purchase full-version retail product.

16. In comparison, the issuance of an injunction will have no adverse impact on ATC Computers. An immediate inspection of its books and records is already contractually required, and can not be grounds for claiming hardship. Similarly, ATC Computers has no legitimate right to continue selling academic software to the general public, and no legitimate right to violate the fundamental provisions and policies of the AER program.

17. ATC Computers has presented no evidence that it would suffer prejudice from the issuance of an injunction. It is therefore appropriate to issue the preliminary injunction without the need for a bond. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (district court is afforded wide discretion in setting the amount of the bond in connection with an injunction, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction.

18. There is good cause to permit Microsoft to undertake expedited discovery. Fed. R. Civ. P. 26(d)(1) permits the Court to authorize expedited discovery. Courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause. *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273 (N.D. Cal. 2002). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276. In light of the Defendants' disappearance, there is good cause to permit Microsoft to obtain expedited discovery from independent sources to investigate ATC Computers's activities.

## IV. ORDER AND INJUNCTION

1. Plaintiff's motion (Dkt. # 2) is GRANTED.[2]

2. ATC Computers shall cease and refrain from engaging in any of the following activities, and from assisting, aiding, or abetting any other person or entity in engaging in or performing any of the following activities:

a) selling, transferring, or otherwise disposing of any software, products or materials provided to defendants under the Microsoft AER program; and

---

[2] Although Microsoft initially moved for a preliminary injunction against all Defendants, it modified its motion at oral argument to apply to only ATC Computers. Upon that modification, and after counsel conferred among themselves, the parties agreed to the terms of the injunction as ordered here.

b)      enrolling in any Microsoft program in the future.

        2.      In addition, ATC Computers shall account for all software, products or materials provided to Defendants under the Microsoft AER program, account for the sales and dispositions of such materials, and provide to counsel or an agreed-upon third party any such materials remaining in their possession, custody or control.

        3.      Within 14 days of this order, ATC Computers shall make available to Microsoft all books and records relating to the sale or disposition of all software provided under the AER program. The court will consider entering a protective order for these records upon a motion from either or both parties.

        4.      Microsoft is granted leave to undertake third-party discovery of payment processors, financial institutions and other entities that control independent and verifiable records about the scope of defendants' purchases and sales, the location of Microsoft software, and Defendants' disposition of revenues and transfer of funds. Microsoft is also granted leave to immediately conduct discovery of Defendants' themselves.

        5.      This injunction shall remain in full force and effect until further order of this court.

        IT IS SO ORDERED.

        Dated this 15th day of May, 2009.

                                                _____
                                                The Honorable Richard A. Jones
                                                United States District Judge